IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **Brandon Callier**, on behalf of himself and all others similarly situated, | § § § § | |
| Plaintiff(s) | § § | |
| *versus* | § § | Civil Action No. 3:24-cv-391 |
| **CNU Of Texas, LLC** *dba* **CASHNETUSA** a Delaware Limited Liability Company | § § § § § | **JURY DEMAND** |
| Defendant | § § § § | |

**CLASS ACTION COMPLAINT**

**PLAINTIFFS' ORIGINAL PETITION**                                                              **PAGE 1**

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Brandon Callier, individually and on behalf of all others similarly situated, brings this Class Action Complaint to stop Defendant CNU OF TEXAS, LLC *dba* CASHNETUSA (hereinafter "Defendant") from their illegal practice of placing, through its telemarketers, unsolicited telephone calls in violation of the Telephone Consumer Protection Act ("TCPA"). Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

**PARTIES**

1. Plaintiff is, and at all relevant times herein was, a resident of El Paso, Texas.

2. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

3. Plaintiff is, and at all times mentioned herein was, the "called party" with respect to the telephone number at issue herein, 915-###-4604.

4. Defendant is a limited liability company organized and existing under the laws of Delaware and can be served via registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

5. Defendant, upon information and belief, is a subsidiary of Enova International, Inc ("Enova").

## JURISDICTION AND VENUE

6. This action is brought by Plaintiff pursuant to the Telephone Coinsumer Protection Act, 47 U.S.C. § 227 ("TCPA").

7. This Court has jurisdiction over the subject matter of the claims under the TCPA pursuant to 47 U.S.C. § 227(g)(2). This Court further has jurisdiction over the subject matter of the claims under the TCPA pursuant to 27 U.S.C. § 1331, and has pendant jurisdiction over the subject matter of the claims under the Texas Business and Commerce Code pursuant to 28 U.S.C. § 1367.

8. This Court has general personal jurisdiction over the Defendant as they, upon information and belief, authorized telemarketers to place calls on their behalf to Texas residents, derive or derived revenue from Texas residents, and sell goods and services to Texas residents and have otherwise availed themselves to the State of Texas.

9. Venue of this suit lies in the Western District of Texas, El Paso Division pursuant to 47 U.S.C. § 227(g)(4) because violations of the TCPA occurred within the Western District of Texas, as more specifically alleged below. Venue further lies in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of events giving rise to the claim alleged herein occurred within the Western District of Texas,

## FACTUAL ALLEGATIONS

10. Plaintiff has been on the National Do-Not-Call Registry since December 2007.

11. On August 14, 2023, Plaintiff sued Enova International, Inc, for TCPA violations in cause number EP-23-CV-00296-KC.

12. Each of the TCPA violations was for unwanted solicitation text messages.

13. Enova was served with Plaintiff's complaint and summons on or about September 7, 2023. At said point in time, Enova and all of its' affiliates and subsidiaries were on notice that Plaintiff was on the National Do Not Call Registry and did not consent to any solicitation text messages.

14. Each of the text messages in this Complaint was a solicitation text message that encouraged Plaintiff to obtain a loan from Defendant.

15. Each text message contained an embedded link for Plaintiff to click to apply for a loan.

16. On January 29, 2024, Plaintiff received the first of at least forty-six (46) automated text messages from Defendant soliciting consumer loan services. The text message was from "Amy" from "Simpleverify".

17. Plaintiff received a series of varied text messages soliciting the same consumer loan services. Text messages were received from: "Simpleverify", "Checkgo", and "Automatic Policy".

18. Each of the text messages was linked to a website that contained the same business address, 3651 S. Lindell Road, D1137, Las Vegas, Nevada, 89103.

19. On March 15, 2024, Plaintiff clicked the link text (*See* Table A, Row 32, titled "Jack-Checkgo") and was directed to the website: http://app.simplequotes.co.

20. Plaintiff filled out an application on this website for the sole purpose of discovering and ascertaining the identity of the sender of the automated text messages.

21. In completing the loan application, Plaintiff used a text app number ending in "3456" from a texting app to avoid the submission of his actual phone number online.

22. Plaintiff was directed to: http://apply.cashnetusa.com which stated, "Thank you for

visiting from one of our lending partners."

23. Plaintiff clicked the "terms of use" hyperlink and was directed to:

    http://www.cashnetusa.com/terms-of-use.

24. The terms of use located at http://www.cashnetusa.com/terms-of-use stated, "Ownership of Site. Welcome to www.cashnetusa.com, including any linked websites and mobile applications (the "Site"). The Site is owned and operated by CNU Online Holdings, LLC and its subsidiaries and affiliates operating under the CashNetUSA brand.

25. On March 29, 2024, Plaintiff clicked the link text (Table A, Row 40, titled "Checkgo") and was directed to a website: http://logins.checkgo.org.

26. Plaintiff filled out an application for the sole purpose of finding out the identify of the sender of the automated text messages.

27. When filling out the loan application, Plaintiff used a text app number ending in 3456 from a texting app to avoid the submission of his actual phone number online.

28. Plaintiff was again directed to: http://apply.cashnetusa.com which stated, "Thank you for visiting from one of our lending partners."

29. The website http://apply.cashnetusa.com had a section titled "Ownership of Site," Welcome to www.cashnetusa.com, including any linked websites and mobile applications (the "Site."  The Site is owned and operated by CNU Online Holdings, LLC and its subsidiaries and affiliates operating under the CashNetUSA brand.

30. The website http://apply.cashnetusa.com states, "TX residents:  CashNetUSA operates as a Credit Access Business (CAB) to arrange a loan between you and an unaffiliated third-party lender.

31. Defendant attempted to arrange a loan between Plaintiff and an unaffiliated third-party

lender.

32. Plaintiff received an email from Defendant from email address noreply@cashnetusa.com stating, "Dear Brandon Callier, Customer #44038959, Thank you for your application. You only have a few more steps to get cash in your bank account" as a direct result of the application Plaintiff filled.

33. Plaintiff took a video recording of the loan application process and screenshots of the loan application process.

34. On April 12, 2024, Plaintiff clicked a link from a text messsage (Table A, Row 53, titled "Jacklyn - Simpleverify") and was directed to a website chat.simpleverify.org.

35. Plaintiff filled out an application for the sole purpose of determining who was sending the "simpleverify" text messages.

36. Plaintiff was sent an email from no-reply@netcredit.com informing Plaintiff that his loan application had been denied.

37. The terms of use located at https://www.netcredit.com/terms-of-use states, "The Site is owned and operated by CNU Online Holdings, LLC and its subsidiaries and affiliates operating under the NetCredit brand."

38. Each of the three applications Plaintiff submitted as a result of clicking the text message links resulted in a loan application being processed through Defendant.

39. The text messages in this case were automatic text messages that could only have been sent knowingly and willfully. It is impossible to inadvertently send automated text messages.

40. Table A shows the text messages sent to Plaintiff by Defendants.

TABLE A:

| Number: | Date: | Time: | Caller ID: | Note: |
|---|---|---|---|---|
| 1. | 01/29/2024 | 2:15 PM | 57504 | Amy - Simpleverify |
| 2. | 01/29/2024 | 5:40 PM | 360-646-3675 | Michelle - Simpleverify |
| 3. | 01/30/2024 | 12:03 PM | 57504 | Amy - Simpleverify |
| 4. | 01/31/2024 | 2:00 PM | 57504 | Amy - Simpleverify |
| 5. | 02/03/2024 | 11:28 AM | 57504 | Amy - Simpleverify |
| 6. | 02/05/2024 | 8:48 AM | 855-937-4312 | Simpleverify |
| 7. | 02/05/2024 | 9:30 AM | 360-646-3680 | Simpleverify |
| 8. | 02/07/2024 | 5:07 PM | 253-239-0152 | Michelle - Checkgo |
| 9. | 02/08/2024 | 11:58 AM | 855-937-4312 | Jacob – Simpleverify |
| 10. | 02/09/2024 | 9:50 AM | 360-646-3680 | Jacob – Simpleverify |
| 11. | 02/09/2024 | 11:59 AM | 855-937-4312 | Jacob – Simpleverify |
| 12. | 02/13/2024 | 11:22 AM | 209-816-2316 | Michelle - Checkgo |
| 13. | 02/13/2024 | 4:07 PM | 57504 | Jacob - Simpleverify |
| 14. | 02/14/2024 | 3:26 PM | 57504 | Jacob - Simpleverify |
| 15. | 02/20/2024 | 8:35 AM | 209-301-8260 | Michelle - Checkgo |
| 16. | 02/21/2024 | 8:42 AM | 209-816-2314 | Michelle - Checkgo |
| 17. | 02/22/2024 | 3:08 PM | 208-602-9679 | CheckGo |
| 18. | 02/23/2024 | 1:14 PM | 385-341-2350 | Jacob – Automatic policy |
| 19. | 02/23/2024 | 3:57 PM | 615-680-1146 | Jay – 5 Minute Policy |
| 20. | 02/24/2024 | 4:20 PM | 254-323-4153 | Jay – 5 Minute Policy |
| 21. | 02/26/2024 | 8:29 AM | 209-301-8260 | Michelle - Checkgo |
| 22. | 02/28/2024 | 8:09 AM | 385-341-2132 | Jacob – Automatic policy |

| | | | | |
|---|---|---|---|---|
| **23.** | 02/29/2024 | 9:41 AM | 253-239-0144 | Michelle - Checkgo |
| **24.** | 03/08/2024 | 3:49 PM | 209-503-8825 | Checkgo |
| **25.** | 03/08/2024 | 4:35 PM | 360-646-3668 | Jaclyn - Simpleverify |
| **26.** | 03/08/2024 | 11:54 AM | 360-646-3668 | Jaclyn - Simpleverify |
| **27.** | 03/09/2024 | 4:36 PM | 360-646-3668 | Jaclyn - Simpleverify |
| **28.** | 03/11/2024 | 8:29 AM | 360-646-3668 | Jaclyn - Simpleverify |
| **29.** | 03/12/2024 | 11:28 AM | 209-273-2375 | Jacob - Simpleverify |
| **30.** | 03/12/2024 | 5:37 PM | 360-646-3668 | Jaclyn - Simpleverify |
| **31.** | 03/13/2024 | 11:29 AM | 209-273-2375 | Jacob - Simpleverify |
| **32.** | 03/14/2024 | 4:28 PM | 209-816-2294 | Jacky - Checkgo |
| **33.** | 03/14/2024 | 5:08 PM | 360-646-3668 | Jaclyn - Simpleverify |
| **34.** | 03/15/2024 | 1:26 PM | 253-239-0144 | Michelle - CheckGo |
| **35.** | 03/18/2024 | 7:56 AM | 209-301-8262 | Annie - Checkgo |
| **36.** | 03/18/2024 | 5:10 PM | 360-646-3668 | Jaclyn - Simpleverify |
| **37.** | 03/22/2024 | 12:56 PM | 252-306-5564 | CheckGo |
| **38.** | 03/26/2024 | 10:28 AM | 866-966-1264 | Automatic policy |
| **39.** | 03/27/2024 | 7:55 AM | 209-301-8262 | Annie – CheckGo |
| **40.** | 03/29/2024 | 9:58 AM | 209-503-8825 | CheckGo |
| **41.** | 03/29/2024 | 11:02 AM | 360-646-3675 | Jaclyn - Simpleverify |
| **42.** | 03/29/2024 | 3:15 PM | 252-306-5568 | Annie - Checkgo |
| **43.** | 03/30/2024 | 11:03 AM | 360-646-3675 | Jaclyn - Simpleverify |
| **44.** | 04/01/2024 | 12:58 PM | 209-503-8824 | Michelle – 5 minute policy |
| **45.** | 04/02/2024 | 8:19 AM | 866-918-2536 | Jaclyn- automatic policy |

| | | | | |
|---|---|---|---|---|
| **46.** | 04/03/2024 | 4:16 PM | 678-968-4341 | Amy - CheckGo |
| **47.** | 04/04/2024 | 11:00 AM | 678-968-4344 | Amy - CheckGo |
| **48.** | 04/05/2024 | 8:36 AM | 678-968-4344 | Amy - Checkgo |
| **49.** | 04/05/2024 | 3:23 PM | 678-968-4344 | Annie – Checkgo |
| **50.** | 04/06/2024 | 7:19 AM | 360-646-3668 | Jaclyn - Simpleverify |
| **51.** | 04/07/2024 | 7:20 AM | 360-646-3668 | Jaclyn - Simpleverify |
| **52.** | 04/09/2024 | 3:31 PM | 253-239-0152 | Check-Go |
| **53.** | 04/10/2024 | 7:22 AM | 360-646-3668 | Jaclyn - Simpleverify |
| **54.** | 04/11/2024 | 7:06 AM | 209-816-2314 | Amy-CheckGo |
| **55.** | 04/12/2024 | 8:47 AM | 833-226-2468 | Amy-CheckGo |
| **56.** | 04/26/2024 | 8:53 AM | 833-226-2468 | Amy-CheckGo |
| **57.** | 05/02/2024 | 10:30 AM | 678-918-9673 | Simpleverify |

41. Plaintiff did not have a preexisting relationship with Defendant and has never been a customer of Defendant, and has never applied for a loan or any other accounts with Defendant.

42. Defendant had no reason to have Plaintiff's phone number in any database controlled by Defendant.

43. Plaintiff believes an ATDS was used because:

    a. Plaintiff was never a customer of Defendant and Defendant did not have a legitimate reason to have Plaintiff's phone number on any list, or database, from which Plaintiff's phone number would have been sent text messages.

    b. Random of sequential generation explains how Defendant obtained and texted

      Plaintiff's number, considering Plaintiff did not give it to Defendant, or have a relationship with Defendant, or otherwise consent to the text messages.

    c.  Had Defendant obtained Plaintiff's number from a pre-existing list, rather than through random or sequential generation, the list likely would have been scrubbed against the National Do Not Call Registry and Plaintiff's number would have been removed.

    d.  Had Defendant CashNet obtained Plaintiff's number from a pre-existing list, rather than through random or sequential generation, the list likely would have been scrubbed against the Defendant's internal Do Not Call list and Plaintiff's number would have been removed.

    e.  The text messages came from seven different area codes and a short text code.

    f.  Defendant on nine different occasions sent text messages to Plaintiff within hours from different phone numbers and area codes.

44. Defendant placed multiple text messages to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC registry since 2007, which violated § 227(c) and 47 C.F.R. § 64.1200(c).

45. Defendant knew or should have known that its conduct would violate the TCPA and its regulations because Plaintiff has been on the National Do Not Call Registry since December 2007.  Plaintiff's Cell Phone is a Residential Phone

46. No emergency necessitated none of the alleged illegal automated text messages.

47. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

### LAWS VIOLATED

48. Defendants' conduct described above violates at least one provision of the TCPA.

49. Defendant's conduct described above violates at least one provision of the Texas Business and Commerce Code.

50. The TCPA establishes a National Do-Not-Call Registry of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order"). 113.

51. These regulations are codified at 47 CFR 64.1200(c)(1-2). 114.

52. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

53. A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … property, goods, or services, which his transmitted to any person", but excludes a call or message "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15).

54. A violation of 47 C.F.R. § 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any person who has received more than one telephone call within any 12-month period in violation of a regulation promulgated under 47 U.S.C. § 227(c) (such as § 64.1200(c)).

55. Furthermore, under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

56. Pursuant to TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), it is unlawful for any person within the

United States or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

57. The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State to make telephone solicitations inside the state of Texas or to residents in Texas.

58. "'Telephone solicitation' means a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item."

59. "A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation." Tex. Bus. & Com. Code § 302.002.

60. A "seller" is defined as "A person who makes a telephone solicitation on the person's on behalf." Tex. Bus. & Com. Code §302.001(5).

61. A "salesperson" is defined as "A person who is employed or authorized by a seller to make a telephone solicitation." Tex. Bus. & Com. Code §302.001(4).

62. Federal common law principles of agency apply to TBCC violations…and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller

violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls.")

63. Upon information and belief, Defendant is the "seller" and directly liable for violations of Tex. Bus. Com. Code § 302.101.

## CLASS ALLEGATIONS

64. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) Defendant texted (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.
>
> **Texas Subclass**. All persons in Texas who: (1) from the last 4 years to present (2) Defendant texted (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

65. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

66. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendant has called hundreds if not thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendant's records.

67. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited messages.

68. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

69. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

70. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a. Whether the unsolicited calls were caused by the Defendant;

    b. Whether the unsolicited calls promoted the Defendant's products or services;

    c. Whether the Defendant checked the phone numbers to be called against the Federal Do Not Call registry;

    d. Whether the Defendant obtained written express consent prior to sending the text messages;

    e. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of Defendant's conduct.

71. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## COUNT ONE:
## (Violation of the TCPA "Automated Telemarketing" Prohibition, 47 U.S.C. 227(b)(1)(A)(iii))
## (On Behalf of Plaintiff and the TCPA Class)

72. Plaintiff incorporates the preceding paragraphs seventy-one as if fully set forth herein.

73. Defendant and/or their agents placed at least fifty-seven (57) automated text messages to Plaintiff's cellular telephone.

74. Plaintiff never consented to receive automated text messages from Defendant. Plaintiff had no relationship with Defendant.

75. Defendant's automated text messages were made for advertising and marketing their goods and services. These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

76. The automated text messages were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

77. As a result of their unlawful conduct, Defendant repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant to stop their unlawful text message campaigns.

78. Not only did Defendant make these violating automated text messages, but Defendants and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

79. If the Court finds that Defendant willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**COUNT TWO:**
**(Violation of the TCPA "sales call/dnc" prohibition, 47 U.S.C. 227(c), and 47 C.F.R §
64.1200(c))**
**(On behalf of Plaintiff and the TCPA class)**

80. Plaintiff realleges paragraphs one through seventy-nine and incorporates them herein as if stated in full.

81. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

82. Defendant sent at least fifty-seven (57) text messages to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

83. Plaintiff was statutorily damaged at least fifty-seven (57) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the automated text messages described above, in the amount of $500 per automated text message.

84. Plaintiff is entitled to an award of at least $500 in damages for each such violation, 47 U.S.C. § 227(c)(5)(B).

85. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**Count Three**
**(Violations Of Texas Business And Commerce Code § 305.053)**
**(On behalf of Plaintiff and the Texas Subclass)**

86. Plaintiff realleges paragraphs one through eighty-five and incorporates them herein as if

stated in full.

87. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 305.053 by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without his prior express written consent in violation of 47 U.S.C. § 227 *et seq*.

88. Upon information and belief, the Defendant violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

89. Plaintiff is entitled to an award of at least $500 in damages for each such violation. Texas Business and Commerce Code 305.053(b).

90. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Texas Business and Commerce Code 305.053(c).

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES

91. Plaintiff realleges paragraphs one through ninety-one and incorporates them herein as if stated in full.

92. Defendant's actions were a nuisance and an invasion of privacy.

93. Defendants' calls trespassed on Plaintiff's right to privacy and interfered with Plaintiff's interests in his cellular phone.

94. Plaintiffs' phone is registered in his personal name, paid for from personal accounts and used to communicate with friends and family, timing food when cooking, and other basic necessities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing his counsel as Class Counsel;

B. An order declaring that the Defendant's actions, as set out above, violate 227(b) and 227(c) of the TCPA;

C. An order declaring that the Defendant's actions, as set out above, violate Section 305.053 of the Texas Business and Commerce Code.

D. An order declaring that the Defendant's actions, as set out above, violate the TCPA willfully and knowingly;

E. An award of $1,500.00 per call/text in statutory damages arising from the TCPA §227(b) for each intentional violation and $500.00 per call/text for each unintentional violation;

F. An award of $1,500 per call/text in statutory damages arising from TCPA §227(c) for each intentional violation and $500.00 per call/text for each unintentional violation;

G. An award of $1,500.00 in statutory damages arising from each violation of the Texas Business and Commerce Code § 305.053 and $500.00 per call/text for each unintentional violation;

H. An injunction requiring Defendants to cease sending all unlawful calls and text messages;

I. An award of reasonable attorneys' fees and costs; and

J. Such further relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated this 22nd day of October 2024.

> Respectfully Submitted,
>
> The Darwich Law Firm, LLC
>
> /s/Omar Darwich/
> Omar F. Darwich
> Tx Bar No. 24124686
>
> 10921 Pellicano Dr, #100
> El Paso, TX 79935
>
> (915) 671-2221
> omar@darwichlegal.com
>
> **ATTORNEY FOR PLAINTIFF**

### VERIFICATION STATEMENT

I, Brandon Callier, hereby state under oath that I am the Plaintiff in this dispute, that I have read the foregoing complaint, and that it is are true and accurate to the best of my knowledge and belief, except as to matters stated on information and belief, and that as to those matters I believe to be true.

I declare under penalty of perjury that the foregoing verification is true and correct to the best of my knowledge and belief, and as to any matter stated on belief, I believe such to be true.

Dated this 22nd day of October 2024.

_____
Brandon Callier